# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HENRY MANSON III, | 1:07-cv-00437-OWW-GSA-PC |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT DEFENDANTS' MOTION TO DISMISS BE GRANTED IN PART AND DENIED IN PART |
| v. | |
| DAVID G. SMITH, M.D., et al., | (Doc. 20.) |
| Defendants. | OBJECTIONS, IF ANY, DUE IN THIRTY DAYS |
| _____/ | |

**I.    RELEVANT PROCEDURAL HISTORY**

Henry Manson III ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action filed pursuant to 42 U.S.C. § 1983.  Plaintiff filed the complaint initiating this action on March 20, 2007.  (Doc. 1.)  This action now proceeds with the original complaint, on Plaintiff's claims for deliberate indifference to his serious medical needs in violation of the Eight Amendment, and on state tort claims regarding medical care, against defendants David G. Smith, M.D., Arvindra Brar, M.D.,[1] and James Johnston, M.D.[2]

---

[1] Erroneously sued as Avindra Brar, M.D.  <u>See</u> Answer by Arvindra Brar, Doc. 25 at 1.  Defendant Brar is represented by separate counsel and has not joined in the motion to dismiss.

[2] Defendant Klarich was dismissed from this action by the Court on April 15, 2009.  (Doc. 24.)  Defendant Schwartz was dismissed from this action by the Court on June 19, 2009.  (Doc. 38.)

On March 13, 2009, defendants Smith and Johnston ("Defendants") filed a motion to dismiss the complaint for Plaintiff's failure to exhaust administrative remedies before filing suit. (Doc. 20.) On May 4, 2009, Plaintiff filed an opposition to the motion.[3] (Doc. 29.) On May 8, 2009, Defendants filed a reply to Plaintiff's opposition. (Doc. 31.) Defendants' motion is now before the Court.

## II.    PLAINTIFF'S ALLEGATIONS

Plaintiff is currently incarcerated at Pleasant Valley State Prison in Coalinga, California. The events at issue in this action allegedly occurred while Plaintiff was housed at Corcoran State Prison ("CSP") in Corcoran, California. Plaintiff is seeking money damages, declaratory relief, and injunctive relief based on alleged violations stemming from his medical care.

Plaintiff alleges in the complaint as follows.[4] Plaintiff has an epileptic seizure condition. On April 5, 2003, Plaintiff experienced a painful and violent "grand mal" epileptic seizure, resulting in Plaintiff being transported by ambulance to the prison hospital's emergency room. During the three-day observation stay in the hospital, Plaintiff persistently complained about pain on the right side of his head and in both shoulders. On April 8, 2003, immediately upon discharge from the hospital, Plaintiff submitted a Health Care Services Request form to the 3B medical clinic, complaining of excruciating left shoulder pain.

### A.    Allegations Against Defendant Smith

On May 14, 2003, an MRI was performed on Plaintiff's left shoulder. Defendant David G. Smith, M.D. ("Dr. Smith"), the prison orthopedist, viewed the MRI film, told Plaintiff his shoulder was dislocated, and informed him that treatment would be undertaken in about two weeks.

On May 28, 2003, an x-ray examination of Plaintiff's left shoulder showed a left shoulder dislocation, elevated left clavicle secondary to a left acromioclavicular ("AC joint") separation.

---

[3] Plaintiff was provided with notice of the requirements for opposing an unenumerated Rule 12(b) motion on December 23, 2008. Wyatt v. Terhune, 315 F.3d 1108, 1120 n.14 (9th Cir. 2003). (Doc. 15.)

[4] For purposes of this motion to dismiss, the summary herein concerns only Plaintiff's allegations and claims against defendants Smith and Johnston, with explanatory background information.

2

1    On May 30, 2003, Dr. Smith manually re-aligned Plaintiff's left shoulder while Plaintiff was
2    under general anesthesia.  During the procedure, Dr. Smith made no attempt to surgically correct
3    Plaintiff's elevated distal left clavicle or AC-joint separation.
4          On June 11, 2003, Dr. Smith conducted a post-operative evaluation, advised Plaintiff to
5    begin range of motion exercises, and ordered physical therapy.  Plaintiff was prescribed pain
6    medication, and his "lay-in" from work was extended another ten days.  Plaintiff was to return for
7    another follow-up in six to eight weeks.
8          By July 11, 2003, Plaintiff had been referred back to Dr. Smith for further evaluation,
9    following a recommendation by the physical therapist.  On July 17, 2003, while exercising on a
10   stationary bicycle during physical therapy, Plaintiff's left shoulder "popped" forward, dislocating
11   his shoulder and causing Plaintiff to scream out in excruciating pain.  On July 23, 2003, Dr.
12   Smith evaluated Plaintiff's condition and decided he mainly needed repair of the AC-joint
13   separation.  Dr. Smith indicated that he had made a request to perform the procedure, hoped it
14   could be done in the near future, prescribed a muscle relaxant, and ordered Plaintiff to return in
15   two to three months.
16         Plaintiff continued to experience excruciating pain and discomfort in his left shoulder,
17   which was in a sling, prompting almost daily inquiries to the 3B clinic regarding the status of the
18   surgery.  On August 19, 2003, Plaintiff was informed by a 3B physician that Dr. Smith had not
19   placed him on the scheduled surgery list.
20         On October 5, 2003, Plaintiff's shoulder dislocated again while he was taking a shower,
21   and he was immediately transported to the prison hospital's emergency room where the shoulder
22   was manipulated back into proper alignment.  On October 6, 2003, an x-ray showed the shoulder
23   was not presently dislocated, and Plaintiff was advised to take it easy until surgery.
24         On October 31, 2003, without verbal indication or informed consent, Dr. Smith executed
25   an unauthorized and unnecessary surgical amputation of the distal end of Plaintiff's left clavicle.
26   Dr. Smith failed to take x-rays, or to reduce or surgically correct the dislocation.
27         On November 12, 2003, Dr. Smith conducted a post-operative evaluation, noted
28   degenerative changes in Plaintiff's shoulder, suggested range of motion exercises and Tylenol,

and ordered Plaintiff to return to the clinic in six to eight weeks. On November 20, 2003, Plaintiff dislocated his shoulder again while sleeping in his cell, and he was transported to the prison hospital's emergency room. An x-ray showed dislocation, and the doctor requested emergency referral to the prison orthopedist. On November 21, 2003, Dr. Smith examined a bony protrusion on Plaintiff's shoulder. On December 8, 2003, Dr. Smith referred Plaintiff to an outside orthopedist, opining that Plaintiff needed a total shoulder replacement.

Throughout the next two years, Plaintiff endured further dislocations of both shoulders, visits to the hospital and appointments with physicians, and was finally given much-needed left shoulder surgery at University Medical Center on May 11, 2006. On August 17, 2006, Plaintiff received a total right shoulder joint replacement surgery at Fresno Community Hospital.

### B. Allegations Against Defendant Johnston

On October 5, 2003, Plaintiff's left shoulder dislocated while he was taking a shower, and he was immediately transported to the prison hospital's emergency room where the shoulder was manipulated back into proper alignment. On October 6, 2003, defendant James Johnston, M.D. ("Dr. Johnston") viewed an x-ray taken of Plaintiff's left shoulder in the emergency room, determined the shoulder was not presently dislocated, and advised Plaintiff to take it easy until his scheduled surgery.

The surgery was delayed. On July 14, 2004, Plaintiff dislocated his right shoulder and was transported to the emergency room at Bakersfield's Mercy Hospital. The shoulder was re-aligned while Plaintiff was under general anesthesia. While Plaintiff was being transported back the prison, his right shoulder dislocated again and he was immediately returned to the hospital. Dr. Johnston, the attending emergency room physician, examined Plaintiff, took an x-ray, and determined the shoulder was not dislocated. Plaintiff insisted the shoulder was dislocated, but Dr. Johnston refused to re-align the shoulder. Dr. Johnston recommended that Plaintiff be referred back to an outside orthopedist, gave Plaintiff a right shoulder sling, prescribed Motrin, and scheduled him for follow up in seven days. However, Plaintiff was not transported to an outside medical facility, and there was no attempt by any prison physician to treat or reduce Plaintiff's right shoulder dislocation.

In August 2004, Plaintiff was seen by an outside orthopedist who determined Plaintiff's right shoulder was dislocated. The doctor re-aligned the shoulder, but it was unstable and dislocated again.

On January 3, 2005, Plaintiff was taken to the prison hospital emergency room in excruciating pain. Dr. Johnston, the attending physician, ordered an x-ray and determined Plaintiff's right shoulder was not dislocated. Plaintiff disagreed and asked Dr. Johnston to check again, but Dr. Johnston only ordered pain medication, a follow-up with the yard physician, and noted that Plaintiff was scheduled to see the outside orthopedist.

On January 5, 2005, Plaintiff was returned to the emergency room with severe pain in his right shoulder. However, the attending physician told Plaintiff to leave and return to the emergency room the following morning.

On February 15, 2004, Dr. Johnston examined more x-rays of Plaintiff's right shoulder and determined the shoulder was not dislocated. Plaintiff insisted on treatment for a dislocated shoulder and made a bet with the doctor that the shoulder was dislocated. Dr. Johnston injected Plaintiff with a muscle relaxant and manipulated the shoulder until a loud "pop" was heard when the shoulder was properly replaced in its joint. Dr. Johnston then applied a sling and ordered a follow-up with the facility physician.

Throughout the next two years, Plaintiff endured further dislocations of both shoulders, visits to the hospital and appointments with physicians, and was finally given much-needed left shoulder surgery at University Medical Center on May 11, 2006. On August 17, 2006, Plaintiff received a total right shoulder joint replacement surgery at Fresno Community Hospital.

### III. PLAINTIFF'S CLAIMS

#### A. Eighth Amendment Medical Care Claims

Plaintiff claims that Defendants violated his rights to adequate medical care under the Eighth Amendment when they failed to properly treat his injured shoulders, causing him to suffer pain and further injury.

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d

1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).  The two part test for deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent."  Jett, 439 F.3d at 1096 (quoting McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal quotations omitted)).  Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care."  Id. (citing McGuckin, 974 F.2d at 1060 (internal quotations omitted)).  A prison official does not act in a deliberately indifferent manner unless the official "knows of and disregards an excessive risk to inmate health or safety."  Farmer v. Brennan, 511 U.S. 825, 837 (1994).  Where a prisoner is alleging a delay in receiving medical treatment, the delay must have led to further harm in order for the prisoner to make a claim of deliberate indifference to serious medical needs.  McGuckin 974 F.2d at 1060 (citing Shapely v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985)).

In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial.  Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action."  Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06).  "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."  Estelle, 429 U.S. at 106; see also Anderson v. County of Kern, 45 F.3d 1310, 1316 (9th Cir. 1995); McGuckin, 974 F.2d at 1050, overruled on other grounds, WMX Techs., 104 F.3d at 1136.  Even gross negligence is insufficient to establish deliberate indifference to serious medical needs.  See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir.

///

1990). A prisoner's mere disagreement with diagnosis or treatment does not support a claim of deliberate indifference. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).

Plaintiff claims that Dr. Smith violated his rights when he failed to provide emergency treatment to Plaintiff's left shoulder dislocation after diagnosing a shoulder dislocation on MRI film following an examination on May 14, 2003; when he failed to treat Plaintiff's left A-C joint separation which the doctor knew to exist during the course of performing corrective surgery of Plaintiff's left shoulder dislocation; when he failed to provide emergency treatment after Plaintiff re-dislocated his shoulder and injured his A-C joint while undergoing physical therapy on July 17, 2003; when he amputated Plaintiff's distal left clavicle without medical necessity, pre-surgery discussion, or Plaintiff's informed consent, and disregarded Plaintiff's shoulder dislocation while performing an alleged corrective surgical procedure; when he failed to ascribe emergency protocol to Plaintiff's left shoulder dislocation and A-C joint separation in response to an "emergency" orthopedic referral by an attending prison physician; when he failed to follow up on the specifics of an outside orthopedist's orders and recommendations; and when he withheld from Plaintiff's prison medical file all significant medical documentation generated by an outside orthopedist.

Plaintiff claims that Dr. Johnston violated his rights when he failed to undertake a more meaningful physical examination and evaluation of Plaintiff's dislocated right shoulder, while having previous personal experience and knowledge of Plaintiff's medical history.

B.     **State Law Claims**

Plaintiff also brings state tort law claims against Defendants, for their failure to properly treat his injured shoulders, causing him to suffer pain and injury.[5]

///

///

---

[5] Plaintiff also attempts to bring claims pursuant to the California Penal Code. (Cmp. at 60-61 ¶¶ 220-221.) As a rule, criminal actions may only be started by the state and not by private parties. Under California law, "[A] criminal action is prosecuted in the name of the people of the State of California, as a party, against the person charged with the offense." Cal.Penal Code § 684. Therefore, Plaintiff cannot bring claims pursuant to the California Penal Code as a private party.

IV.     **MOTION TO DISMISS**

Defendants bring a motion to dismiss the complaint pursuant to Rules 12(b) and 12(b)(6), for Plaintiff's failure to exhaust administrative remedies, and for Plaintiff's failure to timely file a complaint as to state law claims pursuant to California Government Code § 945.6(a)(1).

      A.     <u>**Motion to Dismiss for Failure to Exhaust Administrative Remedies**</u>

           1.     **Legal Standards**

                a.     **PLRA Exhaustion Requirement**

Pursuant to the Prison Litigation Reform Act of 1995 ("PLRA"), "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Prisoners must complete the prison's administrative process, regardless of the relief sought by the prisoner and regardless of the relief offered by the process, as long as the administrative process can provide some sort of relief on the complaint stated. <u>Booth v. Churner</u>, 532 U.S. 731, 741 (2001). "Proper exhaustion[, which] demands compliance with an agency's deadlines and other critical procedural rules . . . ." is required, <u>Woodford v. Ngo</u>, 548 U.S. 81, 90 (2006), and may not be satisfied "by filing an untimely or otherwise procedurally defective . . . appeal." <u>Id.</u> at 83-84.

The <u>Booth</u> court held that the PLRA requires administrative exhaustion even where the grievance process does not permit award of money damages and prisoner seeks only money damages, as long as the grievance tribunal has authority to take some responsive action. <u>Booth</u>, 532 U.S. at 732. "The meaning of the phrase 'administrative remedies ... available' is the crux of the case." <u>Id</u>. At 731. In discussing the meaning of the term "remedy," the court noted that "depending on where one looks, 'remedy' can mean either specific relief obtainable at the end of a process of seeking redress, or *the process itself*, the procedural avenue leading to some relief." <u>Id</u>. at 738. (emphasis added.)  Thus, the court determined that the language of the statute, which requires that the "available" "remed[y]" must be "exhausted" before a complaint under § 1983 may be entertained, refers to "exhaustion" of the *process available*. <u>Id</u>. at 738-739. (emphasis added.)  It follows, then, that if an inmate exhausts the process that is made available to him, he

8

has satisfied the requirement of the statute. "Availability" of relief for purposes of the exhaustion requirement under the PLRA turns on how the prison views and treats a prisoner's complaint based on its own procedures. Brown v. Valoff, 422 F.3d 926, 942 (9th Cir. 2004). Delay in responding to a grievance may demonstrate that no administrative process is in fact available. Id.

### b.  CDCR's Grievance Process

The Court takes judicial notice of the fact that the California Department of Corrections and Rehabilitation ("CDCR") has an administrative grievance system for prisoner complaints. Cal.Code Regs., tit. 15 § 3084.1 (2007). The process is initiated by submitting a CDC Form 602. Id. at § 3084.2(a). Appeals must be submitted within fifteen working days of the event being appealed, and the process is initiated by submission of the appeal to the informal level, or in some circumstances, the first formal level. Id. at §§ 3084.5, 3084.6(c). Four levels of appeal are involved, including the informal level, first formal level, second formal level, and third formal level, also known as the "Director's Level." Id. at § 3084.5. In order to satisfy § 1997e(a), California state prisoners are required to use this process to exhaust their claims prior to filing suit. Woodford, 548 U.S. at 85; McKinney v. Carey, 311 F.3d, 1198, 1199-1201 (9th Cir. 2002).

### c.  Unenumerated Rule 12(b) Motion to Dismiss

Section 1997e(a) does not impose a pleading requirement, but rather, is an affirmative defense under which Defendants have the burden of raising and proving the absence of exhaustion. 42 U.S.C. § 1997e(a); Jones v. Bock, 549 U.S. 199, 215-16 (2007); Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). The failure to exhaust nonjudicial administrative remedies that are not jurisdictional is subject to an unenumerated Rule 12(b) motion, rather than a summary judgment motion. Wyatt, 315 F.3d at 1119 (citing Ritza v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 365, 368 (9th Cir. 1998) (per curium)). In deciding a motion to dismiss for failure to exhaust administrative remedies, the Court may look beyond the pleadings and decide disputed issues of fact. Wyatt , 315 F.3d at 1119-20. If the Court concludes that the prisoner has failed to exhaust administrative remedies, the proper remedy is dismissal without prejudice. Id.

### 2. Appeal # IAB 5086833/COR-03-3232

#### a. Parties' Positions

The Court looks to Defendants' motion, Plaintiff's opposition, Defendants' reply, and Plaintiff's verified complaint filed on March 20, 2007.[6] (Docs. 1, 20, 29, 31.)

Defendants argue that Plaintiff's Appeal #IAB 5086833/COR-03-3232 ("Appeal #1") was never accepted and processed at the Director's Level, and therefore Plaintiff failed to exhaust his remedies as to his allegations in the complaint against Defendant Smith.

Defendants submit evidence that Plaintiff's Appeal #1, concerning Plaintiff's allegation that Dr. Smith's May 30, 2003 surgery was deficient, was received by the Inmate Appeals Branch ("IAB") office on December 29, 2003, for Director's Level review. (Grannis Decl. ¶7, Ex. A doc.1.) Appeal #1 had been granted at the Second Level of review – Plaintiff received additional surgery as he requested – but Plaintiff submitted it to the Director's Level for administrative review. (Cmp. at 2 ¶5; Grannis Decl., Ex. A doc.1.) Appeal #1 was screened out on December 29, 2003, for being submitted after the fifteen-day submission period, and Plaintiff was notified by letter dated January 18, 2004. (Grannis Decl. ¶7, Ex. A doc.1, Ex. B doc.5.)

Defendants also submit evidence that Plaintiff contested the decision that Appeal #1 was submitted late. On January 28, 2004, Plaintiff submitted a new 602 appeal form ("new appeal") to CSP, requesting documentation showing he had submitted Appeal #1 during the fifteen-day submission period. (Grannis Decl. ¶10, Ex. B docs.6, 7.)

On March 4, 2004, Plaintiff received a letter from Associate Warden D. Ortiz, acknowledging that Appeal #1 had been submitted during the 15-day submission period, stating that Plaintiff could use the letter as verification upon resubmitting Appeal #1. (Grannis Decl. ¶9, Ex. B doc.9.)

The new appeal was returned to Plaintiff with a letter from IAB Chief Grannis ("Grannis") dated March 10, 2004, notifying Plaintiff that the new appeal was incomplete and

---

[6] In deciding a motion to dismiss for failure to exhaust administrative remedies, the Court may look beyond the pleadings and decide disputed issues of fact. Wyatt, 315 F.3d at 1119-20. Plaintiff signed the complaint under penalty of perjury. Therefore, Plaintiff's opposition to the motion to dismiss is based in part on the evidence in his verified complaint and its accompanying exhibits.

10

should be resubmitted with supporting documents. (Grannis Decl. ¶11, Ex. B doc.10.)  Plaintiff wrote a letter to Grannis in response on March 31, 2004, explaining that he had submitted the new appeal to resolve the timeliness issue of Appeal #1. (Grannis Decl. ¶12, Ex. B doc.11.) Grannis responded back in a letter dated June 8, 2004, stating that Plaintiff's letter had been forwarded to the appeals coordinator at CSP for further action and for return of the materials to IAB by July 8, 2004, after which time Plaintiff would receive further resolution from IAB. (Grannis Decl. ¶13, Ex. B doc.12.) Defendants surmise that the requested materials were never returned to IAB. (Grannis Decl. ¶13:16-17.)

Based on the absence of IAB business records, Defendants conclude that Plaintiff never re-submitted Appeal #1 to the Director's Level. (Grannis Decl. ¶14.)

Plaintiff responds that he did re-submit Appeal #1 to the Director's Level after it was screened out on January 18, 2003, and submits as evidence a copy of Appeal #1 stamped "received on May 13, 2004" by the Appeals Branch. (Opp'n at 3; Cmp. at 2 ¶5, Ex. A doc.3.) Plaintiff argues that the Appeals Branch had the opportunity to review Appeal #1 at the Director's Level on May 13, 2004, and if they failed to do so, Plaintiff was not at fault. (Opp'n at 4.) Plaintiff thus concludes that he met the requirements of exhaustion as to Appeal #1. Id.

Defendants reply that Plaintiff's argument must be rejected because he failed to address what is stated in the declaration of Grannis and what the exhibits show, i.e., that Plaintiff never submitted properly completed, timely or competent appeal paperwork for a Director's Level review, and also because he never returned the original CDC-602 with supporting paperwork for the new appeal. (Reply at 1-2.)

### b. Discussion

There is no dispute that Appeal #1 was never processed at the Director's Level. However, Plaintiff's evidence shows that he submitted Appeal #1 for decision at the Director's Level on May 13, 2004, grieving the medical care and two surgeries he received from Dr. Smith, and the IAB never made a final decision. Plaintiff did not file this lawsuit until February 15, 2008, nearly four years later. The Court finds that Plaintiff filed Appeal #1 in a timely manner at all levels required by the CDCR's administrative appeals process, but he never received a final

decision at the Director's Level, despite assurance by the Chief of the IAB that he would "receive further resolution" from IAB after July 8, 2004. Taking into consideration that the IAB erred in finding Plaintiff's appeal untimely, and then after Plaintiff successfully contested the decision and resubmitted the appeal, failed to follow up on its own procedures to resolve it, the Court finds that Plaintiff has sufficiently complied with the administrative grievance process available to him. As stated above, delay in responding to a grievance may demonstrate that no administrative process is in fact available. Brown, 422 F.3d at 942. Therefore, the Court finds that Plaintiff exhausted the remedies that were made available to him, concerning his allegations in the complaint against Dr. Smith. The Court shall recommend that Defendants' motion to dismiss the allegations against Dr. Smith, based on Plaintiff's failure to exhaust, be denied.

### 3.  Appeal # IAB 502889/COR-05-1681

#### a.  Parties' Positions

Defendants maintain that there is no evidence that any appeal, including Plaintiff's Appeal # IAB 0502889/COR-05-1681 ("Appeal #2"), exhausted Plaintiff's remedies as to his allegations against defendant Johnston. (Grannis Decl. ¶¶17, 18.) Appeal #2 was originally filed at CSP on June 9, 2005. (Grannis Decl. ¶15, Ex. C doc.1.) In Appeal #2, Plaintiff requested to be transferred to CMT pursuant to his institution's orthopedist's recommendation, and to be evaluated and treated at a tertiary health care facility pursuant to the outside orthopedist's August 10, 2004 recommendation. (Grannis Decl. ¶15, Ex. C docs.1-4.) Defendants also maintain that Plaintiff made allegations of deliberate indifference against Dr. Johnston and other medical staff in Appeal #2. (Grannis Decl. ¶15.) At the Second Level of review, Appeal #2 was partially granted on August 9, 2005, when Plaintiff was scheduled to be seen by an outside orthopedic specialist the third week of August 2005. (Grannis Decl. ¶17, Ex. C doc.5.) At the Director's Level, Appeal #2 was granted on November 7, 2005, but only as to Plaintiff's request for an outside evaluation, and not as to any allegations against defendant Johnston. (Grannis Decl. ¶16, Ex. C doc.6.) Defendants' search of the IAB database revealed no records of any other appeal which exhausted Plaintiff's remedies as to his allegations against defendant Johnston. (Grannis Decl. ¶¶17, 18.)

In his opposition to the motion to dismiss, Plaintiff refers the Court to his Exhibit B, without explanation, asserting that he exhausted his administrative remedies in Appeal #2. (Pltf's Opp'n at 4:19-20.) Exhibit B includes the November 7, 2005 Director's Level decision for Appeal #2, which states, "This decision exhausts the administrative remedy available to the appellant within CDCR." (Pltf's Opp'n, Ex. B doc.1.)

Defendants reply that Plaintiff's entire opposition must be rejected because it was not supported by a declaration made under penalty of perjury, as required by Rule 43(e). (Deft's Reply at 2:2-14.)

### b.     Discussion

As stated above, the Court looks to Defendants' motion, Plaintiff's opposition, Defendants' reply, and Plaintiff's verified complaint filed on March 20, 2007. (Docs. 1, 20, 29, 31.)

Defendants have met their burden of demonstrating that Plaintiff failed to exhaust his remedies prior to filing suit, in compliance with section 1997e(a), as to his allegations against Dr. Johnston. The Court does not find any allegations of deliberate indifference against Dr. Johnston in Appeal #2. Moreover, the Director's Level decision for Appeal #2 clearly only exhausted Plaintiff's remedies as to his request for an evaluation by an outside orthopedic specialist. Plaintiff has not submitted evidence of any other appeal that satisfies the exhaustion requirement as to his allegations against defendant Johnson.[7] Therefore, the Court shall recommend that Defendants' motion to dismiss the allegations against Dr. Johnston be granted, and that Dr. Johnston be dismissed as a defendant in this action, based on Plaintiff's failure to exhaust.

///
///
///

---

[7] In his complaint, Plaintiff refers to Appeal #05-00110, which was received by Medical Appeals on January 24, 2005. (Cmp. at 3 ¶8, Ex. A13-A15.) In this appeal, Plaintiff refers to the dislocation of his right shoulder and maintains that a routine x-ray did not clearly show the dislocation, resulting in "misdiagnosis by the attending physician." Plaintiff requested another type of x-ray and corrective surgery on his right shoulder, and the appeal was granted at the First Level on February 15, 2005. Id. There is no evidence that Plaintiff was dissatisfied with this response or that he re-submitted this appeal for further administrative review.

## B. Motion to Dismiss State Claims for Failure to Timely File Complaint

### 1. Legal Standards

#### a. Rule 12(b)(6) Motion to Dismiss

Defendants brought a motion pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Plaintiff's state claims are time barred under California Government Code § 945.6(a)(1).

In considering a motion to dismiss for failure to state a claim, the court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the party opposing the motion, and resolve all doubts in the pleader's favor. Jenkins v. McKeithen, 395 U.S. 411, 421, reh'g denied, 396 U.S. 869 (1969). Pro se pleadings are held to a less stringent standard than those drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520 (1972). A motion to dismiss for failure to state a claim should not be granted unless it appears beyond doubt that plaintiff can prove no set of facts in support of the claim that would entitle him to relief. See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); see also Palmer v. Roosevelt Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981).

#### b. Supplemental Jurisdiction

Pursuant to 28 U.S.C. § 1367(a), in any civil action in which the district court has original jurisdiction, the district court "shall have supplemental jurisdiction over all other claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III [of the Constitution]," except as provided in subsections (b) and (c). "[Once judicial power exists under § 1367(a), retention of supplemental jurisdiction over state law claims under 1367(c) is discretionary." ACI v. Varian Assoc., Inc., 114 F.3d 999, 1000 (9th Cir. 1997). The Supreme Court has cautioned that "if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well." United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966).

///

///

### c. California Tort Claims Act

California's Tort Claims Act requires that a tort claim against a public entity or its employees be presented to the California Victim Compensation and Government Claims Board, formerly known as the State Board of Control, no more than six months after the cause of action accrues. Cal. Govt. Code §§ 905.2, 910, 911.2, 945.4, 950-950.2 (West 2009). Presentation of a written claim, and action on or rejection of the claim are conditions precedent to suit. State v. Superior Court of Kings County (Bodde), 32 Cal.4th 1234, 1245, 90 P.3d 116, 124, 13 Cal.Rptr.3d 534, 543 (2004); Mangold v. California Pub. Utils. Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995). To state a tort claim against a public employee, a plaintiff must allege compliance with the Tort Claims Act. State v. Superior Court, 32 Cal.4th at 1245, 90 P.3d at 124, 13 Cal.Rptr.3d at 543; Mangold, 67 F.3d at 1477; Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 627 (9th Cir. 1988). An action must be commenced within six months after the claim is acted upon or is deemed to be rejected. Cal. Govt. Code § 945.6; Moore v. Twomey, 120 Cal.App.4th 910 (Cal.App. 3 Dist. 2004).

### 2. Parties' Positions

Defendants argue that Plaintiff's state law claims should be dismissed because he failed to file his complaint within six months after his government claim was denied, as required by California Government Code § 945.6(a)(1). (Mtn. at 8:18-20.) As evidence, Defendants refer to copies of Plaintiff's claim submitted on December 21, 2003, to the California Victim Compensation and Government Claims Board ("VCGCB"), attached to Plaintiff's complaint as Exhibits A24 to A35. (Mtn. at 8:21-23; Cmp. Ex. A24-A35.) On March 31, 2004, Plaintiff submitted an addendum to the claim. (Mtn. at 8: 23-24; Cmp. Ex. A36-A38.) On November 4, 2004, the VCGCB sent Plaintiff its written denial of the claim which also contained the written warning that pursuant to Government Code Section 945.6, he only had six months, or until May 5, 2005, to file a court action on his claim. (Mtn. at 8: 24-26; Cmp. Ex. A40.) Defendants conclude that because Plaintiff waited to file the complaint until March 20, 2007, more than six months after the claim was denied, Plaintiff's state law claims should be dismissed with prejudice. Mtn. at 8-9:28-2.)

Plaintiff replies that Defendants' motion should be dismissed because he has alleged a deliberate indifference claim which is "beyond state law."

### 2. Discussion

Defendants have demonstrated that Plaintiff failed to file his complaint within six months after his government claim was denied, as required by California Government Code § 945.6(a)(1). Evidence shows that on November 4, 2004, the VCGCB sent Plaintiff notice that his claim, which included allegations of inadequate medical treatment for his shoulders, had been denied by the VCGCB on October 29, 2004. (Cmp. Ex. A40.) Moreover, the VCGCB warned Plaintiff in the notice that he had only six months to file a court action on the claim. Id. Plaintiff's complaint was not filed until March 20, 2007. Plaintiff has not provided any evidence to the contrary. Therefore, the Court shall recommend dismissal of Plaintiff's state claims, with prejudice.

## V. CONCLUSION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. Defendants' motion to dismiss be granted in part and denied in part;
2. Defendants' motion to dismiss the allegations against defendant Smith, based on Plaintiff's failure to exhaust, be DENIED;
3. Defendants' motion to dismiss the allegations against defendant Johnston, based on Plaintiff's failure to exhaust, be GRANTED;
4. Defendants' motion to dismiss Plaintiff's state claims, with prejudice, based on Plaintiff's failure to file his complaint within six months after his government claim was denied, be GRANTED;
5. Defendant Johnston be DISMISSED from this action;
6. Plaintiff's state claims be DISMISSED, with prejudice;
7. This action proceed only on Plaintiff's claims for inadequate medical care in violation of the Eighth Amendment against defendants Smith and Brar; and
8. The Clerk be directed to reflect the dismissal of defendant Johnston from this action on the Court's docket.

    These Findings and Recommendations will be submitted to the United States District Court Judge assigned to this action pursuant to the provisions of 28 U.S.C. § 636 (b)(1). Within thirty (30) days after being served with a copy of these Findings and Recommendation, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." The parties are advised that failure to file objections within the specified time may waive the right to appeal the order of the District Court. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

    IT IS SO ORDERED.

Dated: **December 8, 2009**                              /s/ **Gary S. Austin**
                                                                           UNITED STATES MAGISTRATE JUDGE