1
2
3
4
5
6
7       **UNITED STATES DISTRICT COURT**

8       EASTERN DISTRICT OF CALIFORNIA

9

10   HENRY MANSON III,                          1:07-cv-00437-OWW-GSA-PC

11                   Plaintiff,                 FINDINGS AND RECOMMENDATIONS,
                                                RECOMMENDING THAT DEFENDANT
12          v.                                  BRAR'S MOTION FOR SUMMARY
                                                JUDGMENT BE GRANTED
13   DAVID G. SMITH, M.D., et al.,
                                                (Doc. 40.)
14
                     Defendants.                OBJECTIONS, IF ANY, DUE IN 30 DAYS
15
     _____/
16

17          Henry Manson III ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis

18   in this civil rights action filed pursuant to 42 U.S.C. § 1983.  Now pending before the Court is

19   the motion for summary judgment by defendant Arvindra Brar, M.D.

20   **I.      RELEVANT PROCEDURAL HISTORY**

21          Plaintiff filed the complaint initiating this action on March 20, 2007.  (Doc. 1.)  This

22   action now proceeds with the original complaint, on Plaintiff's claims for deliberate indifference

23   to his serious medical needs in violation of the Eight Amendment, against defendants David G.

24   Smith, M.D., and Arvindra Brar, M.D[1]. [2]

25   _____

26          [1]Erroneously sued as Avindra Brar, M.D.  <u>See</u> Answer by Arvindra Brar, Doc. 25 at 1.  Defendant Smith is
     proceeding with separate counsel and has not joined this motion for summary judgment.

27          [2]Defendant Klarich was dismissed from this action by the Court on April 15, 2009.  (Doc. 24.)  Defendant
     Schwartz was dismissed from this action by the Court on June 19, 2009.  (Doc. 38.)  Defendant Johnston was
28   dismissed from this action via motion to dismiss on January 27, 2010.  (Doc. 41.)

1

On January 19, 2010, defendant Arvindra Brar, M.D. ("Defendant") filed a motion for summary judgment. (Doc. 40.)   On March 1, 2010, Plaintiff filed a response in opposition to the motion for summary judgment.[3]  (Doc. 44.)  On March 9, 2010, Defendant filed a reply to the opposition.  (Doc. 46.)

## II.   SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).  Under summary judgment practice, the moving party

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Id. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  Fed.R.Civ.P. 56(e); Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp., 475 U.S. 574, 586 n.11 (1986);

---

[3] Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment by the Court in an order filed on December 23, 2008.  Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).  (Doc. 15.)

1   First Nat'l Bank of Arizona v. Cities Service Co., 391 U.S. 253, 289 (1968);  Strong v. France,

2   474 F.2d 747, 749 (9th Cir. 1973).  In attempting to establish the existence of this factual dispute,

3   the opposing party may not rely upon the denials of its pleadings, but is required to tender

4   evidence of specific facts in the form of affidavits, and/or admissible discovery material, in

5   support of its contention that the dispute exists.  Fed.R.Civ.P. 56(e); Matsushita, 475 U.S. at 586

6   n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that

7   might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc.,

8   477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d

9   626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a

10  reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc.,

11  818 F.2d 1433, 1436 (9th Cir. 1987).

12          A verified complaint in a pro se civil rights action may constitute an opposing affidavit

13  for purposes of the summary judgment rule, where the complaint is based on an inmate's

14  personal knowledge of admissible evidence, and not merely on the inmate's belief.  McElyea v.

15  Babbitt, 833 F.2d 196, 197-98 (9th Cir. 1987) (per curium); Lew v. Kona Hosp., 754 F.2d 1420,

16  1423 (9th Cir. 1985); Fed.R.Civ.P. 56(e).  Plaintiff's complaint is verified and will be considered

17  by the Court in resolving Defendant's motion to the extent that it sets forth admissible facts.  The

18  parties bear the burden of supporting their motions and oppositions with the papers they wish the

19  court to consider and/or by specifically referring to any other portions of the record they wish the

20  court to consider.  Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir.

21  2001).  The Court will not undertake to mine the record for triable issues of fact.  Id.

22  **III.     PLAINTIFF'S ALLEGATIONS AGAINST DEFENDANT BRAR**

23          Plaintiff is currently incarcerated at Pleasant Valley State Prison in Coalinga, California.

24  The events at issue in this action allegedly occurred while Plaintiff was housed at Corcoran State

25  Prison ("CSP") in Corcoran, California.  Plaintiff is seeking money damages, declaratory relief,

26  and injunctive relief based on alleged violations stemming from his medical care.

27

28

1    Plaintiff alleges in the complaint against Defendant as follows.[4]

2    Plaintiff has an epileptic seizure condition.  On April 5, 2003, Plaintiff experienced a

3    painful and violent "grand mal" epileptic seizure, resulting in Plaintiff being transported by

4    ambulance to the prison hospital's emergency room.  Defendant was the attending emergency

5    room physician upon Plaintiff's arrival at the hospital.  After Plaintiff regained consciousness, he

6    complained to Defendant of pain on the right side of his head and in both shoulders.  In response,

7    Defendant stated, "You are being admitted for observation relative to your recent seizure."

8    Defendant indicated to Plaintiff that if the pain in Plaintiff's shoulders persisted upon discharge

9    from the hospital, Plaintiff would have to submit a Health Care Services Request Form to the

10   facility clinic for evaluation by the attending yard physician.  Plaintiff continued to complain of

11   pain on the right side of his head and both shoulder areas, especially the left shoulder, throughout

12   the three-day observation stay in the prison hospital.  Plaintiff contends that his complaints of

13   pain are inaccurately reflected on his medical records, where it indicates that Plaintiff only

14   complained of pain on the right side of his head and in his right shoulder.

15   Plaintiff's prescription medication Clonazepam was renewed by Defendant upon

16   Plaintiff's admission to the hospital on April 5, 2003.  All of Plaintiff's previously prescribed

17   seizure medications were renewed upon Plaintiff's discharge from the hospital on April 8, 2003.

18   On April 8, 2003, immediately upon Plaintiff's discharge from the prison hospital,

19   Plaintiff submitted a Health Care Services Request Form to the 3B medical clinic complaining of

20   excruciating pain in his left shoulder.  Plaintiff was never summoned to the 3B medical clinic in

21   response to the Request Form.

22   On May 14, 2003, Plaintiff gained emergency access to the 3B facility due to intolerable

23   left shoulder pain.  Dr. Cantwell examined Plaintiff and referred him immediately to the prison

24   orthopedist, who performed an MRI and diagnosed Plaintiff with a dislocated left shoulder.

25   ///

26

27   _____

28   [4]For purposes of this motion for summary judgment, the summary herein concerns only Plaintiff's
allegations and claims against defendant Brar, with explanatory background information.

Plaintiff claims that Defendant violated his Eighth Amendment rights to adequate medical care when he treated Plaintiff on April 5, 2003 and failed to undertake a meaningful effort to discover the source of pain on the right side of Plaintiff's head and both shoulders after an extremely violent epileptic seizure attack.  Plaintiff claims that Defendant knew or should have known that he was violating the physician's code of professional ethics by telling Plaintiff to submit a Health Care Services Request Form to the facility clinic to initiate evaluation of shoulder pain if Plaintiff's shoulders continued to be painful upon discharge from hospital observation.

## IV.   UNDISPUTED FACTS[5]

**NO. 1:**

Arvindra Brar, M.D., is a licensed physician and surgeon in the State of California.

**NO. 2:**

Dr. Brar has been employed as a physician and surgeon with the CDCR at CSP since 2001.

**NO. 3:**

Dr. Brar works as a yard doctor and emergency room doctor and his responsibilities include treating inmates at various clinics in the prison and in the emergency room.

**NO. 4:**

One of the inmates he treated was Henry Manson.

**NO. 5:**

Dr. Brar saw Manson on April 5, 2003 for a seizure disorder.

---

[5]These facts are undisputed for the sole purpose of this motion.  Plaintiff filed a separate statement, admitting or denying each fact set forth by Defendant as undisputed.  (Doc. 44 at 2-10.)  Plaintiff also filed a declaration reciting his version of the facts.  (Doc. 44 at 11-13.)  Plaintiff's complaint is verified and shall be treated as an affidavit for purposes of the summary judgment rule where it is based on facts within Plaintiff's personal knowledge of admissible evidence, and not merely on Plaintiff's belief.  Johnson v. Meltzer, 134 F.3d 1393, 1399-1400 (9th Cir. 1998); McElyea, 833 F.2d at 197-98; Lew, 754 F.2d at 1423; Fed.R.Civ.P. 56(e).

1   **NO. 6:**

2       Manson had been found on the floor of his housing unit on April 5, 2003, with

3       saliva drooling from his mouth.

4   **NO. 7:**

5       Manson was not verbally communicative and therefore was taken to the prison's

6       emergency room where he was able to report that he had been in the dayroom of

7       his housing unit when he had a seizure.

8   **NO. 8:**

9       Manson was alert and oriented by the time he arrived at the emergency room, but

10      he complained of being tired.

11  **NO. 9:**

12      Manson complained to nursing staff of shoulder and arm pain and a headache on

13      the right side of his head, and he reported he always hurt on his right side

14      following a seizure.[6]

15  **NO. 10:**

16      A seizure happens when a brief, strong surge of electrical activity affects part or

17      all of the brain; it can cause involuntary changes in body movement or function,

18      sensation, awareness, or behavior.

19  **NO. 11:**

20      A sudden unexpected seizure in someone who had previously obtained control

21      over his seizure disorder is known as a breakthrough seizure and may occur when

22      a person stops taking his anti-seizure medication or his body has built up a

23      tolerance to the medication to the point at which it is no longer effective.

24  ///

25  ///

26

27  _____

28      [6]Plaintiff disputes UF No. 9, stating that he "complained to nursing staff *and Defendant*." (emphasis added.)
    Plaintiff expands, rather than disputes, this fact and therefore UF No. 9 as written above remains undisputed.

**NO. 12:**

>  The standard treatment for a patient who has suffered a seizure is for the physician to review the patient's medical history, conduct a physical examination, and order lab tests to determine the anti-seizure drug levels in the patient's blood.

**NO. 13:**

>  A seizure disorder is generally treated through drug therapy, particularly with the use of anti-seizure medications such as Clonazepam, Phenytoin, and Topiramate, often used in combination with one another.

**NO. 14:**

>  Because a seizure typically causes muscle spasms, a common side effect of a seizure, depending on the seizure's severity, will be muscle soreness.

**NO. 15:**

>  Headaches are also a common side effect of a seizure.

**NO. 16:**

>  The soreness and headache typically go away on their own in a short time without medical intervention, although a mild pain reliever may be given to treat the muscle soreness and headache.

**NO. 17:**

>  More serious physical injuries may also occur if a patient happens to fall or strike something during a seizure, and it is therefore important to examine a patient for evidence of physical trauma.

**NO. 18:**

>  Because a patient who suffers a seizure is often unable to relate the details of the seizure–only learning himself of the seizure when he awakes in a hospital–and because it is important to determine the type of seizure a patient suffered so that an appropriate treatment plan may be formulated, it is common to admit the

///

1    patient to the hospital for observation and to monitor the patient for any further

2    seizure activity.

3  **NO. 19:**

4    On April 5, 2003, Dr, Brar conducted a review of Manson's medical history to

5    gain an understanding of his condition.

6  **NO. 20:**

7    Dr. Brar noted from the records that Manson was taking Topiramate, Phenytoin

8    and Clonazepam for his seizure disorder; however, Manson informed Dr. Brar

9    that his seizure medication had run out a few days before the seizure occurred.

10  **NO. 21:**

11    In addition to his anti-seizure medication, Dr. Brar noted that Manson had been

12    prescribed Ibuprofen, a common medication for the treatment of minor aches and

13    pains.

14  **NO. 22:**

15    Manson reported that he was seated when the seizure occurred.

16  **NO. 23:**

17    Dr. Brar diagnosed Manson as having suffered a breakthrough seizure.

18  **NO. 24:**

19    To monitor Manson for any further seizure activity, Dr. Brar ordered that Manson

20    be admitted to CSP-Corcoran's acute care hospital for observation, ordered that

21    Manson's anti-seizure medication levels be monitored, that all of his medications

22    be continued, and that Manson be re-started on Clonazepam.

23  **NO. 25:**

24    Dr. Brar is aware that Manson reported right arm and shoulder pain to the nursing

25    staff.

26  ///

27  ///

28

**NO. 26:**

> Dr. Brar did not examine Manson again during Manson's stay under observation in the prison's acute care hospital, because Manson was under the care of another doctor.

**NO. 27:**

> During an examination on April 7, 2003, Manson reported that he had been suffering discomfort up the right side of his body but, since being placed back on his Clonazepam, he had had no problems.[7]

**NO. 28:**

> On April 8, 2003, after experiencing no further seizure activity, Manson was discharged from the acute care hospital.

**NO. 29:**

> Manson was scheduled for a follow-up appointment in the yard medical clinic within one week.[8]

**NO. 30:**

> During an examination on May 14, 2003, Manson stated that his shoulders ached after his seizure, saying that the left shoulder was worse than the right.

**NO. 31:**

> A physical examination showed that Manson experienced pain in his left shoulder when elevating his left arm and that he could not place his left hand behind his back.

///

///

---

[7]Plaintiff disputes UF No. 27, declaring that he only indicated he had no other problems with his seizures, not his shoulders.  Plaintiff expands, rather than disputes, this fact and therefore UF No. 27 as written above remains undisputed.

[8]Plaintiff disputes UF No. 29, declaring that the follow-up appointment never happened.  However, Plaintiff has not disputed that the follow-up appointment was scheduled.  Therefore, UF No. 29 as written is undisputed.

**NO. 32:**

> The exam further showed that Manson had a full range of motion in his right arm and shoulder.

**NO. 33:**

> Seen on May 28, 2003, by an orthopedic surgeon, Manson was diagnosed with a dislocation of the left shoulder and he was scheduled for surgery to correct the dislocation.[9]

**V.   ANALYSIS**

**A.   Section 1983 Actions**

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law]. . . subjects, or causes to be subjected, any citizen of the United States. . . to the deprivation of any rights, privileges, or immunities secured by the Constitution. . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.  42 U.S.C. § 1983.

"Section 1983 . . .  creates a cause of action for violations of the federal Constitution and laws."  Sweaney v. Ada County, Idaho, 119 F.3d 1385, 1391 (9th Cir. 1997) (internal quotations omitted).  "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress."  Id.

The statute plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff.  See Monell v. Department of Social Services, 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976).  The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

---

[9]Plaintiff disputes UF No. 33, stating that his shoulder was injured on April 5, 2003, from a grand mal seizure.  Plaintiff expands, rather than disputes, this fact and therefore UF No. 33 as written above remains undisputed.

1

### B.   Medical Claim

2      Plaintiff claims that Defendant was deliberately indifferent to his serious medical needs

3   when he treated him after a seizure on April 5, 2005 and failed to diagnose and treat him for a

4   dislocated shoulder, causing Plaintiff to suffer pain and loss of mobility.

5          1.   Legal Standard

6      "[T]o maintain an Eighth Amendment claim based on prison medical treatment, an

7   inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d

8   1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 295 (1976)).

9   The two part test for deliberate indifference requires the plaintiff to show (1) "'a serious medical

10   need' by demonstrating that 'failure to treat a prisoner's condition could result in further

11   significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's

12   response to the need was deliberately indifferent." Jett, 439 F.3d at 1096 (quoting McGuckin v.

13   Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Techs., Inc. v.

14   Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal quotations omitted)).  Deliberate

15   indifference is shown by "a purposeful act or failure to respond to a prisoner's pain or possible

16   medical need, and harm caused by the indifference." Id. (citing McGuckin, 974 F.2d at 1060).

17   Deliberate indifference may be manifested "when prison officials deny, delay or intentionally

18   interfere with medical treatment, or it may be shown by the way in which prison physicians

19   provide medical care." Id.

20      In applying this standard, the Ninth Circuit has held that before it can be said that a

21   prisoner's civil rights have been abridged, "the indifference to his medical needs must be

22   substantial.  Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this

23   cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980), citing

24   Estelle, 429 U.S. at 105-06.  "[A] complaint that a physician has been negligent in diagnosing or

25   treating a medical condition does not state a valid claim of medical mistreatment under the

26   Eighth Amendment.  Medical malpractice does not become a constitutional violation merely

27   because the victim is a prisoner." Estelle, 429 U.S. at 106; see also Anderson v. County of Kern,

28

45 F.3d 1310, 1316 (9th Cir. 1995); <u>McGuckin</u>, 974 F.2d at 1050, <u>WMX Techs., Inc.</u>, 104 F.3d

at 1136.  Even gross negligence is insufficient to establish deliberate indifference to serious

medical needs.  <u>See</u> <u>Wood v. Housewright</u>, 900 F.2d 1332, 1334 (9th Cir. 1990).

A prisoner's mere disagreement with diagnosis or treatment does not support a claim of

deliberate indifference.  <u>Sanchez v. Vild</u>, 891 F.2d 240, 242 (9th Cir. 1989).

### 2.   **Defendant Brar's Arguments**

Defendant argues that Plaintiff did not have a serious medical need with regard to his left

shoulder, and there is no evidence that he was deliberately indifferent to Plaintiff's serious

medical needs.  In the alternative, Defendant argues that he is entitled to qualified immunity.

### a.   **Inadequate Medical Care**

### *Defendant's Position*

First, Defendant claims that Plaintiff has admitted he has no evidence that Defendant was

deliberately indifferent to Plaintiff's serious medical needs, violated Plaintiff's rights under the

Eighth Amendment, or delayed, denied, or interfered with Plaintiff's medical care.  (Pltf's

Response to Request for Admissions, Set One, Nos. 1-5, attached as Exh B to the Declaration of

Matthew Wilson.)

Second, Defendant argues that Plaintiff had no serious medical need with regard to his

shoulder on April 5, 2003.  While Plaintiff complained to the nursing staff of pain in his right

arm and shoulder, Defendant's physical examination found no evidence of any physical trauma

and no abnormalities of Plaintiff's musculoskeletal system.  (UF 9; Doc. 40-4, Declaration of

Arvindra Brar, M.D. ("Brar Decl") ¶¶2, 4, 10, Exh A at 1773-74, Exh B at 1765-66.)  Plaintiff

informed Defendant that he simply slumped back in his chair during the seizure.  (Brar Decl ¶10,

Exh B at 1765-66.)  Defendant does not recall Plaintiff complaining to him during the

examination about pain in either his right or left arm or shoulder.  (Brar Decl ¶12, Exh B at 1765-

66.)  When seen by medical staff two days later, Plaintiff reported having no problems with his

right side since being placed back on Clonazepam.  (CDCR Medical Records of Plaintiff at 1763,

attached as Exh A to the Declaration of Kelly Stone.)  When Plaintiff was examined on May 14,

2003, he had normal range of motion in his right shoulder.  (UF 32.)  It was the left shoulder that would eventually be diagnosed as being dislocated.  (UF 33.)  However, Defendant argues there is no evidence that Plaintiff complained – either to nursing staff or Defendant – of any pain to his left arm or shoulder on April 5, 2003 or at any time during his hospital stay.

Third, Defendant argues that he was highly responsive to Plaintiff's medical needs.  Defendant took numerous steps on April 5, 2003 to ensure that Plaintiff's seizure disorder was appropriately treated, following the standard course of treatment for a patient who has just suffered a seizure and admitting Plaintiff to the acute care hospital for observation.  (UF 1-26; Brar Decl.)  On physical examination, there was no evidence of any trauma that would cause a right arm or shoulder injury.  (Brar Decl ¶12, Exh B at 1765-66.)  Sore muscles are a common result of a seizure.  (UF 14.)  Defendant ordered that Plaintiff's medications, including for the pain reliever Ibuprofen, be continued.  (UF 24.)

The Court finds that Defendant has met his initial burden of informing the Court of the basis for his motion, and identifying those portions of the record which he believes demonstrate the absence of a genuine issue of material fact.  The burden therefore shifts to Plaintiff to establish that a genuine issue as to any material fact actually does exist.  See Matsushita, 475 U.S. at 586.  As stated above, in attempting to establish the existence of this factual dispute, Plaintiff may not rely upon the mere allegations or denials of his pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  Rule 56(e); Matsushita, 475 U.S. at 586 n.11; First Nat'l Bank of Arizona, 391 U.S. at 289; Strong, 474 F.2d at 749.

### *Discussion*

Turning to Plaintiff's position, the Court looks to Plaintiff's verified complaint and declaration.[10]  (Docs. 1, 44 at 11-12.)  The Court will consider Plaintiff's medical records to the extent that the records are clear and speak for themselves.  However, to the extent that

---

[10]A verified complaint in a pro se civil rights action may constitute an opposing affidavit for purposes of the summary judgment rule, where the complaint is based on an inmate's personal knowledge of admissible evidence, and not merely on the inmate's belief.  McElyea, 833 F.2d at 197-98; Lew, 754 F.2d at 1423; Fed.R.Civ.P. 56(e).

interpretation of the records by an expert is necessary, Plaintiff's lay opinions may not be considered.

The Court disagrees with Defendant's conclusion that Plaintiff has admitted he has no evidence that Defendant was deliberately indifferent, violated Plaintiff's rights under the Eighth Amendment, or delayed, denied, or interfered with Plaintiff's medical care.  Defendant relies on the fact that on May 27, 2009, Plaintiff responded that he "possesses insufficient information to deny or admit this request and on that basis denies it," when asked by Defendant to admit that "You have no facts to support your claim that Dr. Brar was deliberately indifferent to your medical needs."[11]   (Pltf's Responses to Requests for Admissions, Set One, attached as Exh B to the Declaration of Matthew Wilson.)  Defendant appears to contend that Plaintiff's assertion that he "possesses insufficient information" is an admission that he has no evidence to support his claim.  The Court disagrees and finds that Plaintiff's response, taken as a whole, is simply a denial of Defendant's Request for Admission.  Plaintiff states at the beginning of his responses that he "has not completed his investigation of the facts relating to this case, has not completed discovery, and has not completed preparation for trial," supporting the assumption that Plaintiff had not finished gathering evidence when he responded to the Requests for Admission on May 27, 2009.  The fact that Plaintiff continues to litigate this action also supports the conclusion that Plaintiff did not intend to concede his deliberate indifference claim against Defendant.

However, the Court agrees that Plaintiff has not shown evidence that Defendant was deliberately indifferent.  First, Plaintiff fails to show that he had a "serious medical need" with respect to his left shoulder when seen by Defendant on April 5, 2003.  It is undisputed that Plaintiff was examined on May 14, 2003 for pain in his left shoulder and diagnosed with a dislocated left shoulder on May 28, 2003.  (UF 33.)  Plaintiff contends that his left shoulder was already dislocated when Defendant treated him on April 5, 2003.  (Declaration of Manson

---

[11] Plaintiff also responded in the same manner to each of Defendant's Requests for Admission No. 1-5, in which he was asked to admit that "Dr. Brar did not deny you medical treatment," "Dr. Brar did not delay your medical treatment," "Dr. Brar did not violate your rights under the Eighth Amendment," and "Dr. Brar did not violate any of your constitutional rights."  (Pltf's Responses to Requests for Admissions, Set One, attached as Exh B to the Declaration of Matthew Wilson.)

("Manson Decl") ¶15.)   A dislocated shoulder would be considered a serious medical need, such that "failure to treat [the] condition could result in further significant injury or the unnecessary and wanton infliction of pain."   However, Plaintiff's self-diagnosis that his shoulder was dislocated on April 5, 2003 is not admissible evidence, and Defendant claims there is no evidence that Plaintiff's left shoulder was dislocated on April 5, 2003.   Also, the fact that Plaintiff was diagnosed with a dislocated left shoulder on May 28, 2003 does not prove that the shoulder was dislocated on April 5, 2003.

Plaintiff's records show that he has suffered from chronic recurrent dislocation of his shoulders, due to degeneration, for years.   He had corrective surgery in 1988.   (Exhs to Complaint #B64, B66, Doc. 1.)   Evidence shows that Plaintiff's shoulders can dislocate without severe trauma.   On one occasion, Plaintiff's shoulder dislocated simply while he was taking a shower.   (Exh to Complaint #B72, Doc. 1.)   Plaintiff's left shoulder could have dislocated during the time between April 8, 2003, when he was discharged from the hospital, and May 28, 2003, when the dislocation was diagnosed.

Plaintiff claims that the medical records showing he only complained of pain on his right side are false.   (Complaint at 10 fn 1, Doc. 1.)   Even taking as true that Plaintiff had pain in both shoulders and reported the pain to Defendant, Plaintiff has not provided evidence that he suffered from more than the usual pain expected after a seizure.   It is undisputed that a seizure typically causes muscle spasms, and a common side effect of a seizure, depending on the seizure's severity, will be muscle soreness and headaches.   (UF 14, 15.)   Plaintiff does not describe experiencing pain to a degree that would indicate a serious injury had occurred to either of his shoulders during the seizure.   Plaintiff even reported that he always hurts on his right side following a seizure.   (UF 9.)   According to records made during the 3-day observation in the hospital, Plaintiff slept well, ate well, and showed no distress up until the time he was discharged.   (Exhs to Complaint #B47-B54, Doc. 1.)   Even taking Plaintiff's allegations as true, there is no evidence that Plaintiff had a serious medical need on April 5, 2003 with regard to his shoulder.

1    Second, even if Plaintiff <u>had</u> a serious medical need on April 5, 2003, he has not shown

2    that Defendant was aware of it and knew that a substantial risk of serious harm existed.

3    "Deliberate indifference is a high legal standard." <u>Toguchi v. Chung</u>, 391 F.3d 1051, 1060 (9th

4    Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from

5    which the inference could be drawn that a substantial risk of serious harm exists,' but that person

6    'must also draw the inference.'" <u>Id.</u> at 1057 (quoting <u>Farmer v. Brennan</u>, 511 U.S. 825, 837

7    (1994)). "'If a prison official should have been aware of the risk, but was not, then the official

8    has not violated the Eighth Amendment, no matter how severe the risk.'" <u>Id.</u> (quoting <u>Gibson v.</u>

9    <u>County of Washoe, Nevada</u>, 290 F.3d 1175, 1188 (9th Cir. 2002)).   Plaintiff claims that on April

10   5, 2003, he complained to Defendant of pain on the right side of his head and in both shoulders,

11   to which Defendant responded, "You are being admitted for observation relative to your recent

12   seizure." (Complaint at 9-10, Doc. 1.)   Plaintiff claims Defendant never did a physical

13   examination of his shoulders. (Manson Decl ¶5.)   Plaintiff also claims that Defendant told him

14   that if the shoulder pain persisted upon discharge from the hospital, Plaintiff should submit a

15   Health Care Services Request Form to the facility clinic for evaluation by the attending yard

16   physician. (Complaint at 10:5-8; Manson Decl ¶4.)   Such a response by Defendant, without

17   more, does not demonstrate deliberate disregard of a serious medical need.   Defendant followed

18   the standard course of treatment and admitted Plaintiff to the hospital for observation, where

19   Plaintiff was monitored for symptoms indicating the need for treatment other than medication,

20   rest, and time for recovery. (UF 18.)   Plaintiff has only shown that he disagreed with the course

21   of treatment he received.

22   Based on the foregoing, the Court finds that Plaintiff has not established the existence of

23   triable issues of material fact as to his Eighth Amendment medical care claim against Defendant,

24   and Defendant is entitled to judgment as a matter of law.

25                    **b.    <u>Qualified Immunity</u>**

26   Defendant argues that he is entitled to qualified immunity.   Government officials enjoy

27   qualified immunity from civil damages unless their conduct violates "clearly established statutory

28

1  or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>,
2  457 U.S. 800, 818, 102 S.Ct. 2727, 2738 (1982).  "Qualified immunity balances two important
3  interests - the need to hold public officials accountable when they exercise power irresponsibly
4  and the need to shield officials from harassment, distraction, and liability when they perform
5  their duties reasonably," <u>Pearson v. Callahan</u>, 129 S.Ct. 808, 815 (2009), and protects "all but the
6  plainly incompetent or those who knowingly violate the law," <u>Malley v. Briggs</u>, 475 U.S. 335,
7  341, 106 S.Ct. 1092, 1096 (1986).

8       In resolving a claim of qualified immunity, courts must determine whether, taken in the
9  light most favorable to the plaintiff, the defendant's conduct violated a constitutional right, and if
10  so, whether the right was clearly established.  <u>Saucier v. Katz</u>, 533 U.S. 194, 201, 121 S.Ct.
11  2151, 2156 (2001); <u>McSherry v. City of Long Beach</u>, 560 F.3d 1125, 1129-30 (9th Cir. 2009).
12  While often beneficial to address in that order, courts have discretion to address the two-step
13  inquiry in the order they deem most suitable under the circumstances.  <u>Pearson</u>, 129 S.Ct. at 818
14  (overruling holding in <u>Saucier</u> that the two-step inquiry must be conducted in that order, and the
15  second step is reached only if the court first finds a constitutional violation); <u>McSherry</u>, 560 F.3d
16  at 1130.

17       As discussed above, the Court finds that Defendant Brar did not violate Plaintiff's
18  constitutional rights.  Therefore, the issue of qualified immunity shall not be considered.

19       **VI.    CONCLUSION AND RECOMMENDATION**

20       The Court concludes that Defendant is entitled to judgment as a matter of law because
21  Plaintiff has not established the existence of triable issues of material fact as to his Eighth
22  Amendment medical care claim against Defendant.  Accordingly, the Court RECOMMENDS
23  that the motion for summary judgment be GRANTED.

24       These Findings and Recommendations will be submitted to the United States District
25  Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  **Within**
26  **thirty (30) days** after being served with these Findings and Recommendations, the parties may
27  file written objections with the Court.  The document should be captioned "Objections to

28

Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file

objections within the specified time may waive the right to appeal the district court's order.

<u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).


     IT IS SO ORDERED.

     **Dated:    July 12, 2010**          _____/s/ **Gary S. Austin**_____
                                          UNITED STATES MAGISTRATE JUDGE